UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**DANIEL FORD**
    Plaintiff / Counter-Defendant

v.                                                                                                   No. 5:11CV-00094-R

**AMERICAN RIVER TRANSPORTATION CO.**
    Defendant / Counter-Plaintiff

### MEMORANDUM OPINION and ORDER

This matter is before the Court upon the motion of the Defendant to compel a neuro-psychiatric examination of the Plaintiff in Lexington, Kentucky (DN 26), to which the Plaintiff has responded in opposition (DN 33), and the Defendant has replied (DN 34). The Court has referred this matter to the undersigned Magistrate Judge for ruling on all discovery motions (DN 22). For the reasons below, the motion (DN 26) shall be GRANTED.

### Background and Procedural History

This is a Jones Act case in which the Plaintiff broke his leg on May 3, 2010, while working as a deckhand for the Defendant. Prior to the accident, the Plaintiff had a history of low back pain and depression. He claims that the accident rendered him practically unemployable due to a combination of residual low back pain, borderline mild mental retardation, and other real, organic symptoms.

As to his pain and other subjective symptoms, the Plaintiff's treating and examining physicians have been unable to explain their source and magnitude. On December 29, 2010, Michael Chabot, M.D., opined that "I do not have a good reason for his persisting complaints. His physical examination today is essentially devoid of any objective physical findings" (DN 26-2, p. 1). On May 9, 2012, James Doll, M.D., testified that the Plaintiff "failed to give full effort" during

testing (DN 26-3, p. 2).

The Plaintiff obtained expert evidence from licensed psychologist Robert Kennon, Ph.D. The Plaintiff admits that "Dr. Kennon did not administer specific testing for malingering" (DN 33, p. 5). Nevertheless, Dr. Kennon opined that the Plaintiff exhibited no clinical signs of malingering / exaggeration / motivation for secondary gain (DN 26-8, p. 5) and that the Plaintiff's injury, in combination with his intellectual impairment, academic limitations, and real, organic pain, indicates that his "true vocational impairment approaches total disability" (DN 26-5, p. 13).

In response to Dr. Kennon's findings, the Defendant sent the Plaintiff for evaluation by vocational expert Stephanie Barnes, Rh.D. (Doctor of Rehabilitation). At her deposition, Dr. Barnes testified, among other things, that she administered the 15-point Rey Test, and the results were that the Plaintiff was not malingering (DN 34-1, p. 17).

Thereafter, the Defendant requested that the Plaintiff submit to an independent medical examination (IME) with Robert Granacher, M.D., a neuro-psychiatrist and nationally-recognized expert on medical malingering. Dr. Granacher's office is located in Lexington, Kentucky. This Court sits in the Western District of Kentucky, whereas Lexington is in the Eastern District. According to the Plaintiff, in light of the opinion of the Defendant's chosen expert, Dr. Barnes, which confirmed Dr. Kennon's finding of no malingering, the Defendant seeks only "another bite of the apple" (DN 33, p. 6).

The Plaintiff objected on the grounds that (DN 26-4)

1. Dr. Granacher is a psychiatrist, and Mr. Ford's mental health is not at issue;

2. Dr. Granacher's office is in Lexington, which is more than 300 miles from Mr. Ford's home;

3. Mr. Ford has already submitted to a vocational evaluation by your expert [i.e., Dr.

2

Barnes]; and

4. Other than Dr. Hunt and Dr. Hogancamp, who referred Mr. Ford to Dr. Arendall in Nashville, Artco [the Defendant] has already chosen every one of Mr. Ford's doctors.

### Fed.R.Civ.P. 35(a)

Fed.R.Civ.P. 35(a) states that "[t]he court where the action is pending may order a party whose mental or physical condition ... is **in controversy** *(emphasis added)* to submit to a physical or mental examination by a suitably licensed or certified examiner." The order "may be made only on motion for **good cause** *(emphasis added)* and on notice to all parties and the person to be examined; and ... must specify the time, **place** *(emphasis added)*, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id.*

The "in controversy" and "good cause" requirements of Rule 35(a) "are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). "The decision on whether to issue a Rule 35 order for a mental examination 'lies soundly within the court's discretion.'" *Beightler v. Suntrust Banks, Inc.*, 2008 WL 1984508 at *2 (W.D.Tenn.) (quoting *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y.1993)).

### The In-Controversy Requirement

*Beightler* held that a party's mental condition is "in controversy" if the party alleges "ongoing or permanent mental injury," for example, claims of intentional infliction of emotional distress. *Beightler* (citing *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 209

3

(N.D.Tex.1996), *Peters v. Nelson*, 153 F.R.D. 635, 638 (N.D.Iowa 1994), and *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D.Cal.1995)).  However, federal courts have interpreted the "in controversy" requirement more broadly.  "Where there are psychological implications that go beyond simple embarrassment and where those psychological implications play a real role in the Plaintiff's damages – as they do here, where Plaintiff's overall condition is said to prevent him from returning to work at all – then the mental condition of the Plaintiff is in controversy."  *Mitchell v. Iowa Interstate R.R. Ltd.*, 2009 WL 2431590 at *2 (C.D. Ill.) (citing *Nolan v. International Broth. of Teamsters Health & Welfare and Pension Funds, Local 705*, 199 F.R.D. 272, 275 -276 (N.D.Ill.2001)).  Dr. Kennon opined that the Plaintiff's overall condition prevents him from returning to work.

State courts have reached similar conclusions.  A diagnosis by a treating physician that the patient suffers from a mental condition that causes her to experience physical symptoms out of proportion to any physical insult or ailment is sufficient to place a plaintiff's mental condition is controversy.  *Rose v. Figgie Intern., Inc.*, 495 S.E.2d 77, 86 (Ga.App.1997).  Drs. Chabot and Doll were unable to explain the source and magnitude of the Plaintiff's complaints.  Where defendant harbored genuine doubts, based upon the opinion of an examining physician, as to whether plaintiff's present symptoms were mental or physical in origin, plaintiff's physical and mental conditions were both in controversy.  *Haynes v. Anderson*, 232 N.W.2d 196, 199 (Minn.1975).

The Plaintiff argues that his mental condition is not in controversy because he "only seeks damages for personal injury" (DN 33, p. 4).  He further contends that, even if he were seeking damages for emotional distress, *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 668 (S.D.Cal.2001) held that a plaintiff will be ordered to undergo a mental examination only if, in

addition to emotional distress, he alleges

> 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

The Plaintiff points out that he has made no such allegation.

The Plaintiff's reliance on *Houghton* is unpersuasive because that case dealt only with "garden-variety claim[s] of emotional distress such as that normally associated with or attendant to the suffering of or recovery from a physical injury." *Id.* at 669. These types of claims typically do not put a plaintiff's mental condition in controversy. *Houghton* is inapposite because the Plaintiff is not relying on a garden-variety claim of emotional distress but rather on the theory that his physical injury, in light of his real, organic symptoms, renders him unemployable.

The Plaintiff's mental condition is "in controversy" as contemplated by Fed.R.Civ.P. 35(a) because his treating physicians indicated that he may suffer from a mental condition that causes him to experience symptoms out of proportion to his physical injury and because his expert, Dr. Kennon, opined that, in light of his impairments as a whole, he "is not going to be perceived as a favorable candidate for employment" (DN 26-5, p. 13).

## The Good-Cause Requirement

Having decided that the Plaintiff's mental condition is in controversy, Fed.R.Civ.P. 35(a) requires a determination of whether the Defendant has established "good cause" for the requested mental examination. "Good cause is established by demonstrating both relevance and need." *Beightler*, supra, at *2. It must be determined on a case by case basis, considering "the ability of the movant to obtain the desired information by other means." *Schlagenhauf*, supra, at 118.

5

Good cause was found to be satisfied where "one of plaintiff's experts opines that he has a 'low average IQ' and is not a candidate for re-education and training." *Schaeffer v. Sequoyah Trading & Transportation*, 273 F.R.D. 662, 663 (D. Kan. 2011). This is because the defendant needs to "examine plaintiff's psychological/vocational skills to counter plaintiff's expert witnesses." *Id.* In this case, the Defendant needs to counter Dr. Kennon's opinion that, due to the Plaintiff's real, organic symptoms, low IQ, etc., he is practically unemployable.

The Plaintiff contends that the Defendant does not need to have him submit to an additional IME because he "has already submitted to a vocational evaluation by your expert [Dr. Barnes]" (DN 26-4) and that, in light of Dr. Barnes' opinion that confirmed Dr. Kennon's finding of no malingering, the Defendant seeks only "another bite of the apple" (DN 33, p. 6).

The argument is unpersuasive because Dr. Barnes' opinion of no malingering was based upon the results of the 15-Point Rey Test in which the Plaintiff reproduced correctly 14 out of 15 items (DN 34-1, p. 17). The Rey Fifteen-Item Test (FIT), also known as the Rey 15 Memory Test, is a test to determine whether a claimant has "malingered memory deficits." *Hurse v. Hartford Life and Accident Insurance Co.*, 77 Fed.Appx. 310, *313, 2003 WL 22233532, *2 (6th Cir.2003). The test does not test for general malingering based upon exaggerated pain complaints. See *A Compendium of Neuropsychological Tests: Administration, Norms, and Commentary (Third Edition)*, Esther Strauss, Elisabeth Sherman, Otfried Spreen, Oxford University Press (2006), p. 1166.

The primary issue in controversy in this case is whether the Plaintiff is exaggerating pain complaints, not memory complaints. Dr. Barnes' testing did not address this issue.

Whether or not a plaintiff has previously submitted to an IME is immaterial if the second

6

exam is "neither redundant nor invasive." *Mitchell*, supra, at *2. An examination by Dr. Granacher would be neither redundant nor invasive. On the contrary, it is needed and relevant in order for the Defendant to respond to Dr. Kennon's opinion that the Plaintiff's physical injury renders him unemployable. Defendant has satisfied the "in controversy" and "good cause" requirements of Rule 35(a). Therefore, the Court will GRANT the Defendant's motion to compel examination by Dr. Granacher.

## **The Location of the Examination**

The Plaintiff lives in or near Hickman, Kentucky. Dr. Granacher's office is in Lexington, Kentucky, which is outside this judicial district. The Defendant has offered to pay all reasonable travel expenses for the Plaintiff and another family member, including hotel, meals, and car (DN 26-1, p. 10). The Defendant states that it has "retained Dr. Granacher in a previous case and is comfortable with his examination, record review, and ability to testify" (DN 26-1, p. 11). The Plaintiff has not objected to Dr. Granacher's qualifications or the other terms and conditions of the proposed examination but contends that he should not be compelled to travel to Lexington.

Fed.R.Civ.P. 35(a) consigns to the sound discretion of the Court the terms and conditions of the physical or mental examination, including the "place" of examination.

Neither Hickman nor Paducah has the selection of neuro-psychiatrists who are experts on medical malingering that are available in large cities with universities such as Lexington. It is unreasonable to require Dr. Granacher to travel and conduct an examination of the Plaintiff outside his familiar professional surroundings. Under the circumstances, the Magistrate Judge is satisfied that there is good cause to require the Plaintiff to travel to Lexington to be examined by Dr. Granacher.

The Plaintiff cites *Plaintiff B v. Francis*, 2009 WL 1360853 at *1 (N.D.Fla.2009) for the proposition that "[t]he prevailing view is that [Rule 35] examinations should take place in the district where the action is pending" (DN 33, p. 9, quoting *Plaintiff B*). The Plaintiff's reliance upon *Plaintiff B* is unpersuasive because *Plaintiff B* acknowledged that the general rule of in-district examination can be overcome if "good cause be shown for requiring an examination by a physician outside the judicial district where the action is pending." *Id.*

We have already concluded that there is good cause to require the Plaintiff to travel to Lexington to be examined by Dr. Granacher. *Plaintiff B* is further distinguishable from the present case in that the extent of travel sought in *Plaintiff B* was much more extensive. The defendant sought to compel Plaintiff B to fly from Florida to Maryland to be examined by a psychiatrist at Johns Hopkins. Here, the Defendant seeks only car travel from Hickman to Lexington.

## Order

For the reasons stated above, the Defendant's motion to compel a neuro-psychiatric examination of the Plaintiff in Lexington, Kentucky (DN 26) is GRANTED.

c: counsel